J. H. MITCHELL, JR. AND BLANCHE S. MITCHELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mitchell v. Commissioner
Docket No. 11697-86
United States Tax Court
T.C. Memo 1991-188; 1991 Tax Ct. Memo LEXIS 215; 61 T.C.M. (CCH) 2501; T.C.M. (RIA) 91188; April 29, 1991, Filed *215 Decision will be entered for the respondent. J. H. Mitchell, Jr., pro se. Michael S. Noble, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and an addition to petitioners' joint Federal income taxes as follows: Addition to tax
Year
Deficiency
sec. 6653(a)
1978
$ 30,491
$ 1,525
1979
32,850
-- 1980
28,311
-- After concessions by petitioners, the issue is whether amounts paid by J. H. Mitchell, Jr. (petitioner) are deductible as alimony under section 215. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. Petitioners resided in Los Angeles, California when they filed their petition. Petitioner and his former wife, Marilyn, were separated in the early 1970's. On November 18, 1977, an order was issued in petitioner's marriage dissolution proceeding (divorce case) that resulted in an interlocutory judgment dissolving the marriage of petitioner and Marilyn. This order also bifurcated the issues in petitioner's divorce case by reserving judgment *216 on all matters regarding petitioner's and Marilyn's property rights, spousal support, and other rights. The interlocutory judgment was entered on November 22, 1977, and a final judgment of dissolution of marriage was entered on February 22, 1978. On February 25, 1978, petitioner and Blanche S. Mitchell were married. On October 15, 1980, a judgment was entered with respect to the unresolved issues in petitioner's bifurcated divorce case. This judgment ordered petitioner to pay spousal support to Marilyn in the amount of $ 1,500 a month beginning on August 1, 1980. In May 1978, petitioner presented the following document to Marilyn and requested that she sign it: INTERIM SUPPORT AGREEMENT The undersigned agree that, unless otherwise mutually determined, the following shall be deemed to be periodic payments in discharge of J. H. Mitchell, Jr.'s legal obligations imposed upon or incurred by him because of the marital or family relationship and under this written instrument, which is deemed to be incident to the divorce (dissolution) of the undersigned: 1. All payments of money made directly to Marilyn W. Mitchell. 2. All payments made by J.H. Mitchell, Jr. for the benefit *217 of Marilyn W. Mitchell, including, but not limited to, the payment of household expenses, department store or other charge accounts, and all credit cards used by Marilyn W. Mitchell. DATED as of    , 1978 J.H. Mitchell, Jr. aka James H. Mitchell, Jr. Marilyn W. Mitchell
During the period of separation and prior to the dissolution of their marriage, petitioner voluntarily paid amounts of money to or on behalf of Marilyn. During the period beginning April 5, 1978 and ending July 31, 1980, petitioner paid to or on behalf of Marilyn the following amounts which are the only amounts in dispute: 1978
$ 20,919
1979
45,722
1980
31,882
OPINION Section 215(a) provides that a husband described in section 71 may deduct alimony includable in the gross income of his wife under section 71. Alimony is includable in the gross income of the wife when she is divorced or legally separated from her husband under a decree of divorce or separate maintenance, and periodic payments are made by the husband in discharge of a legal obligation due to the marital relationship under a court decree or "under a written instrument incident to such divorce or separation." Sec. 71(a)(1). The *218 parties are in agreement as to all the requirements for deductibility except whether the "Interim Support Agreement" was signed and, if so, whether its terms were sufficient to constitute a "written instrument incident to such divorce or separation" under section 71(a)(1). The factual dispute revolves around whether the "Interim Support Agreement" was signed by Marilyn and petitioner. Petitioner argues that the agreement was in fact signed. No signed copy of the "Interim Support Agreement" was placed in evidence. Petitioner's position is that the executed document was lost. On the other hand, Marilyn testified that she had a clear recollection that petitioner gave to her and requested that she sign the "Interim Support Agreement," but that she never signed it. Each of the parties has presented corroborating testimony to support their positions regarding whether or not the document was executed. All of the witness appeared to be honest and forthright, but obviously their testimony conflicted. After the passage of approximately 12 years, it is not surprising that memories have gotten fuzzy and recollections may be somewhat tainted by which side the witness is on. However, it *219 is not necessary to resolve that factual question since even if we were to find that the "Interim Support Agreement" was signed by Marilyn and petitioner, such agreement would be insufficient to meet the requirement of section 71(a)(1). The purposes of section 71(a) paragraphs (1) and (2) are sufficiently related that we will consider precedents under section 71(a) paragraph (2) applicable to section 71(a) paragraph (1). If a support agreement does not set forth the required amount of payments or some standard for determining required payments, payments cannot be made "under" such agreement as no payments are required. . The "Interim Support Agreement" presented here sets forth neither specific amounts to be paid nor a formula for determining payments, such as requiring that payments be made in order to continue the standard of living to which the wife has become accustomed. . It has been held that "to have any resemblance of a support agreement, the document must set forth the amount of the support, the duration of the payments, *220 and the support items covered by the payments." , T.C.M. (RIA) 79,337 at 1246 (1979). Under the "Interim Support Agreement," petitioner could pay whatever amounts he wished and, accordingly, any payments would be gratuitous. The agreement drafted by petitioner covered most of the requirements of section 71(a)(1), but it failed to set up any amounts or formula for determining amounts which petitioner was obligated to pay. Thus, the "Interim Support Agreement," even if executed, would not qualify as a written instrument incident to the divorce as it fails to define any standard for the amount of support payments. Decision will be entered for the respondent.